IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

DANA D. ALTHOUSE                                                                 PLAINTIFF

VS.                                    CIVIL NO. 06-2174

MICHAEL J. ASTRUE[1], COMMISSIONER
SOCIAL SECURITY ADMINISTRATION                                   DEFENDANT

## MEMORANDUM OPINION

Dana Althouse ("plaintiff"), brings this action pursuant to § 205(g) of the Social Security Act

("the Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of

the Social Security Administration denying her application for disabled widow's benefits ("DWB")

and supplemental security income ("SSI") under Titles II and XVI of the Act.

## Background:

The applications for DWB and SSI now before this court were filed on September 24, 2004,

alleging an amended onset date of September 22, 2004, due to numbness in her hands, irregular heart

rate, and pain in her shoulders and knees. (Tr. 55, 69, 98-101, 142-146, 177-178).  An administrative

hearing was held on September 13, 2005.  (Tr. 170-193).  Plaintiff was present and represented by

counsel.

The ALJ issued a written decision on January 25, 2006, finding that, although severe within

the meaning of the Regulations, plaintiff's impairments did not meet or medically equal an

impairment contained in the Listing of Impairments in Appendix 1 to Subpart P of Regulations No.

4. (Tr. 20).  The ALJ then determined that plaintiff retained the residual functional capacity ("RFC")

---

[1]Michael J. Astrue became the Social Security Commissioner on February 12, 2007.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue has been substituted for Commissioner Jo Anne B. Barnhart as the defendant in this suit.

to perform light work.  Despite occasional tingling and numbness in her right arm, he concluded that plaintiff had a full range of motion and full use of her right hand, including normal grip strength. Because  her PRW as a quality control line worker in a poultry processing plant did not require the performance of work-related activities precluded by her RFC, he found that plaintiff could return to her PRW.  (Tr. 20-21).

At the time of the ALJ's decision, plaintiff was fifty-six years old and possessed a tenth grade education.  (Tr. 15, 173).  The record reveals that she has PRW as a quality control line worker in a poultry processing plant.  (Tr. 14).

On August 19, 2006, the Appeals Council declined to review this decision.  (Tr. 3-10). Subsequently, plaintiff filed this action.  (Doc. # 1).  This case is before the undersigned by consent of the parties.  Both parties have filed appeal briefs, and the case is now ready for decision.  (Doc. # 14, 15).

**Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have

2

decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)-(f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in

3

light of his or her residual functional capacity.  *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920 (2003).

**Evidence Presented:**

On December 6, 2004, plaintiff underwent a general physical exam with Dr. Gordon McGraw.  (Tr. 131-137).  She complained of numbness and pain in her hands and arms, tachycardia, and arthritis in her shoulders and knees.  Plaintiff was noted to have a regular heart rate and rhythm; a normal range of motion in all joints; no muscle spasm; no joint abnormalities, instability, ankylosis, or contractures; no sensory abnormalities or muscle atrophy; normal gait and coordination; and, a normal grip strength. Further, he determined that plaintiff could hold a pen and write, touch fingertips to palm, oppose thumb to fingers, pick-up a coin, stand and walk without assistive devices, walk on heel and toes, and squat and arise from a squatting position.  A right knee x-ray showed only mild degenerative changes.  (Tr. 138).  As such, he diagnosed plaintiff with mild bilateral ulnar nerve entrapment at the elbow and degenerative arthritis and assessed her with no limitations.  (Tr. 137).

On April 20, 2005, plaintiff complained of pain, primarily in her hands, and stated that her hands went to sleep when she tried to do any type of activity or work with them.  (Tr. 165).  In addition, she reported weakness in her right hand and numbness, tingling, and decreased sensation in her left hand over the thumb, index finger, and long finger.  An examination revealed some slight weakness to grip on the right as compared to the left but symmetrical strength, intact sensation, and good circulation.  Dr. Kyle diagnosed her with probable peripheral neuropathy of the arms and hands and possible carpal tunnel syndrome.  He ordered nerve conduction studies and prescribed carpal tunnel splints.  Dr. Kyle advised plaintiff that in certain cases, carpal tunnel syndrome could be

severe enough to necessitate surgery.  He noted, however, that plaintiff did not seem interested in surgery.  (Tr. 165).

On April 22, 2005, plaintiff underwent nerve conduction studies which were abnormal.  (Tr. 128).  The tests showed moderate carpal tunnel syndrome ("CTS") on the right and borderline CTS on the left.  There was, however, no evidence of neuropathy.  (Tr. 128).

On September 22, 2005, Dr. William Griggs, a neurologist, wrote a letter indicating that he had not examined plaintiff, merely performed nerve conduction studies on her.  (Tr. 141).  However, he stated that it was clear that she had a deficit that involved a pinched nerve in the wrist of the median nerve in both hands, which would cause her to have some numbness of her hand, thumb, index, middle, and sometimes part of her fourth finger.  Further, Dr. Griggs indicated that it could cause her to have weakness in the hand and in grip as well as an inability to touch her thumb to the base of her little finger.  Further, he said that plaintiff's condition could worsen if she were required to do repetitive activities.  Dr. Griggs could not, however, complete the RFC assessment as requested because he did not examine her.  (Tr. 141).

On May 30, 2006, plaintiff was treated for "nerves" and depression.  (Tr. 163).  Records indicate that she was continuing to experience pain in both arms, although worse on the left.  Dr. Kyle diagnosed her with probable depression and bilateral carpal tunnel syndrome.  He prescribed Lexapro and Nabumetone.  He told plaintiff that he "was not following any patients on a regular basis," and that she should "try to initiate some treatment."  Dr. Kyle noted that he had discussed with plaintiff the option of doing something more definitive about her carpal tunnel syndrome but she had indicated that she did not want to do anything more at that time.  (Tr. 163).

5

**Discussion:**

We first address the ALJ's assessment of plaintiff's subjective complaints. The ALJ was required to consider all the evidence relating to plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id.* As the United States Court of Appeals for the Eighth Circuit recently observed , "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

Plaintiff has alleged a variety of disabling physical impairments, including numbness in her hands, irregular heart rate, and pain in her shoulders and knees. We note, however, that the medical records in evidence reveal that she only sought medical treatment for related conditions on two occasions. (Tr. 163, 165). *See Edwards v. Barnhart*, 314 F.3d at 967 (holding that ALJ may discount disability claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment). Further, although nerve conduction studies and an x-ray of plaintiff's knee revealed degenerative arthritis and moderate carpal tunnel syndrome on the right and mild carpal tunnel syndrome on the left, there is no evidence to show that plaintiff was functionally limited by these impairments. *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider).

6

The only doctor to actually evaluate and assess plaintiff's RFC was Dr. McGraw.  His examination revealed a regular heart rate and rhythm; a normal range of motion in all joints; no muscle spasm; no joint abnormalities, instability, ankylosis, or contractures; no sensory abnormalities or muscle atrophy; normal gait and coordination; and, a normal grip strength.  (Tr. 131-137).  Dr. McGraw also found that plaintiff could hold a pen and write, touch fingertips to palm, oppose thumb to fingers, pick-up a coin, stand and walk without assistive devices, walk on heel and toes, and squat and arise from a squatting position.  Ultimately, he assessed plaintiff with no limitations in walking, standing, sitting, lifting, carrying, handling, fingering, seeing, hearing, or speaking.  (Tr. 137).  The only other evidence concerning plaintiff's impairment rating is one notation by Dr. Kyle that she had some slight weakness to grip on the right as compared to the left but symmetrical strength, intact sensation, and good circulation.  *See Matthews v. Bowen,* 879 F.2d 422, 425 (8th Cir. 1989) (medical reports showing only minimal back problem allowed ALJ to discount claimant's subjective complaints of disabling back pain).  As this evidences only a slight impairment, we can not say the ALJ erred in discrediting plaintiff's subjective reports of limitations. *See Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990)(the ALJ properly focused on functional limitations, not diagnoses).

In addition, the record also reveals that plaintiff was not taking any prescription medication to treat her subjective symptoms.  (Tr. 176).  *See Haynes v. Shalala*, 26 F.3d 812, 814 (8th Cir. 1994) (lack of strong pain medication was inconsistent with disabling pain).  In fact, plaintiff testified that she was only taking over-the-counter medications.  (Tr. *Stout v. Shalala*, 988 F.2d 853, 855 (8th Cir.1993) (pain which can be remedied or controlled with over-the-counter analgesics normally will

7

not support a finding of disability).  Had her symptoms been as severe as alleged, at the very least,

we believe plaintiff would have sought prescription medication to help alleviate her discomfort.

Plaintiff alleges that she did not seek additional medical treatment for two reasons.  First, she

contends that Dr. Griggs had advised her that she might have to undergo surgery and, due to her fear

of surgery, she did not wish to proceed with further treatment.  (Tr. 180-181).  While we note that

plaintiff's unrelenting fear of undergoing surgery might provide a "good reason" to excuse her failure

to undergo surgery, had it been recommended, we do not find her fear of surgery to excuse her failure

to pursue any and all further treatment for her carpal tunnel syndrome.  20 C.F.R. § 404.1530 (1990)

(to receive Social Security disability benefits, a claimant must follow treatment prescribed by his

physician if such treatment will restore his ability to work.).

Likewise, we do not find persuasive plaintiff's argument that her failure to pursue treatment

should be excused due to financial hardship.  (Tr. 182-184).  "While not dispositive, a failure to seek

treatment may indicate the relative seriousness of a medical problem ." *Shannon v. Chater,* 54 F.3d

484, 486 (8th Cir.1995).  As we can find no evidence to suggest that plaintiff was ever denied

treatment due to her financial situation or sought treatment from a clinic offering low cost or indigent

health care, we do not find plaintiff's failure to pursue more aggressive treatment to be excused.  *See*

*Murphy v. Sullivan,* 953 F.2d 383, 386-87 (8th Cir.1992) (rejecting claim of financial hardship where

there was no evidence that claimant attempted to obtain low cost medical treatment or that claimant

had been denied care because of her poverty); *Hutsell v. Sullivan,* 892 F.2d 747, 750 n. 2 (8th

Cir.1989) (noting that "lack of means to pay for medical services does not ipso facto preclude the

Secretary from considering the failure to seek medical attention in credibility determinations.")
(internal quotations omitted).

Plaintiff's own reports concerning her activities of daily living also contradict her claim of
disability.  On her supplemental interview outline, plaintiff reported an ability to care for her
personal hygiene, do laundry, wash dishes, change the sheets, vacuum/sweep, take out the trash, shop
for groceries, and go to the bank and post office.  (Tr. 79).  Plaintiff also indicated that she is able
to prepare quick and simple meals, dust, drive, pay bills, count change, use money orders, read,
watch television, and visit with others.  (Tr. 84-86).  *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir.
1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v.
Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend
church); *Novotny v. Chater*, 72 F.3d at 671 (ability to carry out garbage, carry grocery bags, and
drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch
television, and drive indicated her pain did not interfere with her ability to concentrate); *Woolf v.
Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and
perform housework with some help from a neighbor).

Therefore, although it is clear that plaintiff suffers with some degree of pain, she has not
established that she is unable to engage in any gainful activity.  *See Craig v. Apfel*, 212 F.3d 433, 436
(8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate
a finding of disability); *Woolf v. Shalala*, 3 F.3d at 1213 (holding that, although plaintiff did have
degenerative disease of the lumbar spine, the evidence did not support a finding of disabled).
Neither the medical evidence nor the reports concerning her daily activities support plaintiff's

AO72A
(Rev. 8/82)

contention of total disability.  Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that plaintiff's subjective complaints were not totally credible.

Plaintiff also contends that the ALJ erred in finding that she maintained the RFC to perform light work.  It is well settled that the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence."  *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000).  The United States Court of Appeals for the Eighth Circuit has also stated that a "claimant's residual functional capacity is a medical question,"  *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000), and thus, "some medical evidence," *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam ), must support the determination of the plaintiff's RFC, and the ALJ should obtain medical evidence that addresses the claimant's "ability to function in the workplace." *Nevland v. Apfel*, 2 04 F.3d 853, 858 (8th Cir. 2000).  Therefore, in evaluating the plaintiff's RFC, *see* 20 C.F.R. § 404.1545(c), while not limited to considering medical evidence, an ALJ is required to consider at least some supporting evidence from a professional.  *Cf. Nevland v. Apfel*, 204 F.3d at 858; *Ford v. Secretary of Health and Human Servs.*, 662 F. Supp. 954, 955, 956 (W.D. Ark.1987) (RFC was "medical question,"and medical evidence was required to establish how claimant's heart attacks affected his RFC).

In the present case, the ALJ considered the medical assessment of a non-examining agency medical consultant, the results of a general consultative examination, plaintiff's subjective complaints, and her medical records.  On December 14, 2004, Dr. Jerry Thomas, a non-examining, consultative physician, completed a physical RFC assessment. (Tr. 139).  After reviewing plaintiff's medical records, he assessed plaintiff with a non-severe impairment.  (Tr. 139).

AO72A
(Rev. 8/82)

Following an independent review of the record in this matter, we find substantial evidence to support the ALJ's conclusion that plaintiff has the RFC to perform light work.  While we note plaintiff's contention that the ALJ erred by failing to properly consider Dr. Griggs' letter as an assessment from a treating source, we are also cognizant of the fact that Dr. Griggs did not qualify as a treating doctor.  *See* 20 C.F.R. §§ 404.1527(d)(1) and 416.927(d)(1) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you").  In his letter, Dr. Griggs clearly stated that he did not examine or evaluate plaintiff. Instead, he merely performed and interpreted the nerve conduction studies.  After reading Dr. Griggs' letter, it is clear that he was stating the potential limitations that a person with carpal tunnel could have, rather than stating that plaintiff experienced all of those limitations.  As the evidence makes clear that plaintiff did not seek consistent medical treatment for her condition and was never assessed with any significant limitations, we can not say that the ALJ erred.  *See Novotny v. Chater*, 72 F.3d 669, 671 (8th Cir. 1995) (per curiam) (failure to seek treatment inconsistent with allegations of pain).

We also find that substantial evidence supports the ALJ's finding that plaintiff could return to her PRW.  The VE testified that a person who can lift and carry 20 pounds occasionally and 10 pounds frequently; can push and pull within those limits; can stand and walk for up to six hours per day; and, can sit for up to six hours per day, can return to plaintiff's PRW as a quality control inspector at a poultry plant as that job is performed in the national economy.  (Tr. 188-190).  After reviewing the evidence of record, we find that the hypothetical question posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole.  *See Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997); *Pickney v. Chater*,

11

96 F.3d 294, 296 (8th Cir. 1996).  Accordingly, we find substantial evidence to support the ALJ's determination that plaintiff could return to her past relevant work.

Lastly, we address plaintiff's complaint that the ALJ failed to fully and properly develop the record with regard to plaintiff's mental impairments.  Specifically, she contends that the ALJ erred by failing to send plaintiff for a consultative exam.  However, plaintiff did not allege depression as a disabling impairment during the administrative process.  (Tr. 16, 33, 38, 40, 55, 69-110, 142-150, 173-185).  *See Spradling v. Chater*, 126 F.3d 1072, 1074 (8th Cir. 1997) (significant that the plaintiff did not allege disabling mental impairment in his application for benefits).  Further, record reveals that she only sough treatment for depression on one occasion.  (Tr. 163).  The ALJ is not required to order a consultative examination for every alleged impairment.  *See* 20 C.F.R. §§ 404.1517, 416.917.  As such, we see no evidence to indicate that further consultative exams were necessary.

**Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus the decision should be affirmed.  The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

ENTERED this 27th day of August 2007.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)